## W. L. Lyons & Co. v. McGuire.

Jan. 12, 1940.

290

Stoll, Muir, Townsend & Park for appellant.

Hafford E. Hay for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

The parties involved in the litigation in the lower court were appellant, a partnership engaged in the commission brokerage business, with a branch office in Lexington, and one Stanfill, defendants below and appellee, plaintiff below. The latter and Stanfill were residents of Estill county. Appellant had no officer or agent residing in Estill county.

About six years prior to the transaction which was in litigation, the husband of appellee died leaving her 145 shares of Supervised Shares, Incorporated, a Delaware Corporation. At the time of the original issue of stock there were fifteen million shares, of the par value of 10 cents per share.

On March 30, 1936, the corporation amended its charter so as to reduce the outstanding stock to two million shares, or a par value of $1 per share. The corporation mailed notices to its stockholders, advising them of the change in the capital structure, requesting an exchange of the old stock for the new, at the rate of one share of new for eight shares of the old. Mrs. Mc-

Guire had such notice, though she never complied with the request, but continued to hold her original certificate. She rests her failure to exchange on the assertion that she was unfamiliar with stocks, stock markets, and did not know "what it was all about."

Some time before the transaction involved, Mrs. McGuire asked a neighbor, Mr. Stanfill, about the prospects of selling her stock, and to ascertain whether or not it was necessary to have her old certificate transformed. It seems that Stanfill was not versed in the matters, but suggested that another friend, Mr. Duff, was more enlightened in stock dealing matters and that he would make inquiry of him. In the first conversation with Duff it appears that there was a misunderstanding as to the corporate stock which Mrs. McGuire held. This was straightened out, and Duff told Stanfill that the stock would not necessarily have to be reissued, and this information was conveyed to Mrs. McGuire.

As to the value of the stock, Duff expressed no opinion, but suggested that this information could be obtained from appellant's Lexington office. Later Duff and Stanfill approached the manager, telling him that Mrs. McGuire owned 145 shares of Supervised Shares, Incorporated, and after some investigation they were told that the 145 shares were worth between $1,500 and $2,000. This information was conveyed to Mrs. McGuire, and she was advised to, and indicated that she would sell, but for no less than $1,500. Stanfill was coming through Lexington in a few days, and he agreed that he would take the certificate and deliver it to appellant.

On the morning of April 29th or 30th, Stanfill called at appellee's home to get the certificate. She says she was busily engaged in some housework and gave Stanfill the key to her safety box, with directions to obtain the certificate for the purpose of delivery to the appellant. She also executed to Stanfill a power of attorney to sell the stock; it develops that it was not necessary to use the same.

Stanfill obtained the stock and returned with it to appellee's home; she endorsed the certificate and turned it over to him; he proceeded with it to Lexington and delivered it to appellant, and after deducting the usual commission, which was to be divided with its New York correspondent, the manager gave Stanfill a check for $2,007.28, payable to Mrs. McGuire. With this he re-

turned to her home, and at his suggestion she endorsed the check, and Stanfill took it to a bank, receiving the face value in cash. He then returned to appellee's home, delivered to her the $2,007.28, and upon his advice she immediately deposited this amount to her credit in the bank which had cashed the check.

It appears from the proof that when Stanfill advised appellant of Mrs. McGuire's ownership, and her desire to sell the 145 shares, appellant at once listed the order, and so advised Mrs. McGuire by mail. She received notice of the order about the same time, or a few minutes before, she was handed the check by Stanfill. Upon delivery of the stock to appellant, it at once wired its New York correspondent, and in a very short space of time the stock was sold to a customer, delivery to be made not later than May 4. On May 3 the New York correspondent wired appellant that it had sold 145 new shares of Supervised Shares, Incorporated, and had delivered against the sale 145 shares of the old stock.

Immediately upon being informed of the mistake, appellant got in communication with appellee and Stanfill, advising them of the error, and in order to protect itself advised its bank to stop payment of the check which it did, and upon notice to the cashing bank the amount of the check was charged against the account of Mrs. McGuire, and she refused to surrender the check.

Thereafter, appellant wrote to Mrs. McGuire going into details as to the error which had occurred, asking her advice as to "whether you wish us to buy 18 1/8 shares of the new stock, or whether you wish us to buy your certificate back and return same to you." There seems to have been no response to this proposal, and in September 1937 (the first letter was May 5) appellant wrote Mrs. McGuire offering to pay to her $279.72, which was the (proven) value of the 145 shares of the old stock as of date of delivery, if she would return the check. Mrs. McGuire refused to accept the offer.

It appears that at this time the appellant could not get hold of the old certificate, since the purchaser had turned it into the corporation, obtaining therefor the proportionate issue of the new. It also appears that in order to stand by its transaction, appellant was required to, and did go on the market and buy a sufficient number of shares of the new to make up the deficit as between the old and new stock.

With the status as outlined, Mrs. McGuire, on March 18, 1938, filed suit in the manner and against the persons above stated, seeking to recover of appellant and Stanfill the amount of the check. Specifically she alleged that she "delivered the certificate of the shares of stock to the defendant Stanfill, and that he agreed to pay her therefor the sum of $2,007.08." She then follows this with an allegation that he delivered her a check for the amount signed by W. L. Lyons & Company, which she deposited in an Irvine bank, and later the check was returned to her endorsed, "Payment stopped" and the face of the check was (with $1.50 fee of some kind) charged to back her account.

It was further stated that she notified the defendants of the stoppage of payment, and demanded payment of same or the return of her stock certificate; they refusing. She then asserts that "the defendants, and each of them, are justly indebted to her in the sum of $2007.28 for certificate of stock * * * furnished by plaintiff to defendants at the special instance and request of the defendants." She sought judgment against both defendants.

Upon filing of her petition, summons was issued to Estill county which was served on Stanfill; another issued to Fayette county where appellant had one of its branch offices, and as the return shows, was there served on the manager of the branch.

Stanfill demurred to the petition, but appellant, no doubt for a salutary reason did not. It answered and specifically challenged the jurisdiction of the court by asserting that it was a partnership, and that no member of the partnership lived in Estill county; that Stanfill was a resident of that county, and had been joined as defendant for the sole fraudulent purpose of attempting to give the Estill circuit court jurisdiction of the partnership. On this plea it asked that the petition as to it be dismissed for lack of jurisdiction. Later, by amendment, appellant set up a meritorious defensive plea, not necessary to detail.

Stanfill filed separate answer, in which he denied that he had ever agreed to purchase, or purchased, appellee's stock certificate, and says that at her solicitation and acting under her instructions, without compensation, he carried out the transaction solely on behalf of appellee as we have substantially detailed it above,

and that he had no knowledge of the status of the stock at the time of the transaction.

Mrs. McGuire replied to the answer of Lyons & Company, the same consisting of a mixture of denials and affirmations. She denies that Stanfill was her agent, and asserts he was the agent of Lyons & Company, "if he was agent" for anyone. In this reply she again asserts that the stock was delivered to Stanfill and "he agreed and promised to pay her $2,007.28 for same." She stated that she had, through her attorney, agreed to accept her certificate for the 145 shares, but this defendant has refused to return same, or to pay her the $2,007.28. It appears that at this time it was impossible for appellant to return to appellee the original certificate, since the purchaser had turned it into the corporation and had issued to him 18 1/10 shares of the new issue, and the original certificate had been destroyed.

Lyons & Company rejoined, denying that Stanfill was its agent, and that appellee had agreed to accept the original certificate, and that there was any balance due her on her account. It may be noted in appellee's reply, while she alleges that she was willing to accept her certificate in return, she did not agree to return appellant's check. Appellant neither demurred nor replied to Stanfill's answer, though it appears to have been traversed of record.

With the pleadings thus formed, the case was submitted to a jury on instructions which submitted the issues, both as to the liability of Stanfill and appellant separately. Eleven members of the jury signed and returned the following verdict: "We the jury agree and find for plaintiff in the sum of $2,007.28," and upon which verdict judgment was entered. Both defendants moved for new trials, and the court overruled the motion as to Lyons & Company, but sustained Stanfill's motion, and granted him a new trial.

We have thus far detailed the pleadings and procedure, since such statement seems necessary in order to get to the controversial questions, one in particular, the court's jurisdiction of the appellant. It now becomes necessary to give, substantially, a resumé of the proof upon which Mrs. McGuire (and she was the only witness) sought to obtain a judgment. The necessity arises in order to demonstrate that at no stage of the proceeding did appellee have a semblance of a cause of action

against Stanfill. She recites, as we have done, how she came to deliver the stock certificate to Stanfill.

The only mention of a contract to sell Stanfill the stock appears in her testimony, wherein, relating what occurred between herself and Stanfill, after he had learned from appellant that 145 shares of Supervised Shares, Incorporated, would sell for $1,500 to $2,000 she said that Stanfill said "You sign the certificate, and I will sell it," and said "Will you take $1,500 for the stock, and I will leave a $1,500.00 check with you to hold until I come back." "He said, 'Will you take $1,500.00?' and I said 'No, do the best you can,' and he went on to Lexington."

If counsel undertook to twist this colloquy into a sale of stock, or an agreement to purchase, or a meeting of the minds of the parties sufficient to fasten liability on Stanfill, then counsel is grievously in error.

She admits that she got some "papers" from the corporation, but since she was not versed in stock matters she did not know what they were about. These papers appear to have been sent to her about one year prior to the sale, perhaps with some follow ups on the subject, i. e., transformation of the stock. She later shows that she did know something of the import of the correspondence, since she admitted that she asked Stanfill to "find out from W. L. Lyons; I wanted to be sure whether to send it in or keep it;" and further than Stanfill later told her she would not have to turn it in.

We now revert to pleas and procedure. After Mrs. McGuire had testified, appellant moved the court to direct the jury to find for it, and Stanfill moved for a directed verdict in his favor; their motions were overruled. Then appellant moved for an order dismissing the action as against Stanfill, because the testimony of Mrs. McGuire had failed to show any cause of action against Stanfill, hence there was an improper joinder of parties. The court overruled this motion.

At the close of all the testimony the motions above mentioned were renewed, with the same result. In addition Stanfill moved for a judgment on his answer, notwithstanding the verdict, which, as far as the record shows, received no ruling.

On appeal it is argued that the circuit court had no jurisdiction of appellant pursuant to the provisions of

Sections 78 and 80 of the Civil Code of Practice; (2) that the court erred in not sustaining its motion for a peremptory; (3) improper remarks made by plaintiff's attorney in closing the argument.

We have concluded that it is only necessary to discuss the first mentioned ground, because as we review the record, the attempt to hold Stanfill liable was a complete failure, and as we view it, was solely for the purpose of trying to get and hold appellant in the jurisdiction of the court.

Section 78 of the Civil Code of Practice provides that a transitory action may be brought in any county in which the defendant, or in which one of the defendants, who may be properly joined as such in the action, resides or is summoned. If Stanfill was improperly joined, the service on appellant was of no avail. Section 80 of the Civil Code of Practice provides:

"In an action brought pursuant to Section 78, against several defendants, no judgment shall be rendered against any of them, upon the service of a summons out of the county in which the action is brought, if no one of them be summoned in that county, nor resided therein when the action was commenced; nor if the action be discontinued or dismissed as to the defendant who resided, or was summoned, in that county; nor if judgment be rendered in his favor, unless a defendant summoned out of that county make defense without objecting to the jurisdiction of the court."

Here, the appellant being in doubt, as we are, as to whether the petition sufficiently plead joint liability as to it and Stanfill, took no chances by filing demurrer, but properly raised the question by a special plea, set up by way of answer.

There is no question raised as to the place of residence of the parties defendant. Appellee plead these facts in her petition, and naturally there was no denial, so no proof was necessary on this point, nor as to the manner and places of service of process.

While not necessary to consider Stanfill's testimony, we find that it comports with appellee's in every respect, except as to her hint that Stanfill was attempting to buy her stock. We need not again detail Mrs. McGuire's version of the transaction. It is sufficient for

us to say that under her proof the court should have, at the close of her testimony, sustained Stanfill's motion for a directed verdict in his favor. Most assuredly at the close of all the testimony, we can see no possible reason for the court's refusal to direct the jury to find for him. There was no evidence upon which to base a verdict against Stanfill, by way of joint verdict against both defendants, upon which a judgment could or should have been rendered against Stanfill. In other words, insofar as this record reveals, we say without hesitancy, the judgment against Stanfill, under the proof herein shown, would not have stood up under an attack upon it. It did not stand long in the lower court, since upon Stanfill's motion the court below granted him a new trial, and we are not concerned or to be concerned with this ruling, nor are we intending this opinion to be applicable in any way to the outcome of a new trial for him.

We have held that the sections of the Civil Code of Practice, supra, "are construed strictly in favor of defendants who are not residents of the county in which the action is brought." Caywood v. Williams, 218 Ky. 282, 291 S. W. 377, 378. However, in the instant case we are not required to exert ourselves to conclude that the special plea to the jurisdiction should have been sustained.

Counsel for appellee has not furnished us a brief citing any authority on any point discussed in his two and one-half page brief. With relation to the question we are now discussing, it is merely suggested in speaking of the position taken by counsel for appellant, that "they seem to be under the impression that it is necessary to take a judgment first against Stanfill before we can take a judgment against the appellant. Civil Code of Practice, Sections 79, 80. They are in error if our understanding of the law is correct. The action must be dismissed or discontinued or a judgment rendered in Stanfill's favor before the appellant's contention could be sustained."

In the early case of Meguiar v. Rudy, 7 Bush 432, 70 Ky. 432, 433, it appeared that Meguiar had sued Rudy and one Jenkins in the Jefferson circuit court, alleging that he had contracted with both to purchase tobacco for him on a commission basis, and advanced them a certain sum of money. The two defendants failed to purchase the quantity agreed upon, and Meguiar claimed they owed him a balance of $789.90. In his pe-

tition he had so stated his facts as to make it appear that Rudy alone was liable. Summons was had on Jenkins in Jefferson, and on Rudy in McLean, their respective counties of residence.

Rudy by answer plead to the jurisdiction of the court. On final hearing the court below dismissed the petition as to Rudy; Jenkins having made no defense had judgment go against him. Meguiar appealed from the order dismissing the petition as to Rudy, and in denying him reversal we held that if it appear from the petition that no cause of action be stated against the resident defendant, it would be error to render judgment against the nonresident served in a different county. We continued:

"In like manner if it should turn out from the proof that, the plaintiff failed to make out a cause of action against the defendant served with summons in the county in which the suit was brought, it would be erroneous to render judgment against a defendant served with a summons in a different county."

The court, to some extent, reviewed the evidence, and determined that "taking appellant's own version of these transactions, and the connection that Jenkins had with them, it does not appear that he and appellee [Rudy] were jointly engaged for appellant, or jointly responsible to him; and although judgment was rendered against Jenkins, he having made no defense to the action, that fact did not entitle appellant to a judgment against appellee in that court.

In Ward v. George, 1 Bush 357, Ward, a non-resident, was sued in trespass along with two Floyd County defendants. Ward was served in Carter. The jury found for the two local defendants, but against Ward, who appealed. In granting him reversal, we said:

"It being apparent from the verdict that no judgment could be rendered against any defendant served in Floyd, appellant's motion should have been sustained."

His motion it appears was to dismiss the petition as to him. In that case it was said that the object of the Code provision was to prevent a change of jurisdiction by merely joining nominal defendants. See Knox County v. Kelly's Adm'x, 268 Ky. 361, 105 S .W. (2d) 141; Duckworth v. Lee, 10 Bush 51; Reid v. Cain, 3 Ky. Law

Rep. 329, and the recent case of Ramey v. Weddington, 268 Ky. 675, 105 S. W. (2d) 824, 825, 827, in which we said:

> "If several defendants are sued, and one is served with process in another county, judgment cannot be rendered against him if action is dismissed as to, or judgment is not rendered against, one served in the county where the suit was brought."

In Martin v. Franklin, 160 Ky. 61, 169 S. W. 540, 541, plaintiff filed suit in Knott County against Franklin of Knott County and Johnson of Floyd, wherein the latter was summoned. Franklin's demurrer to the petition was sustained, whereupon the court dismissed the petition as to Johnson. This court sustained the lower court's action in dismissing as to Johnson.

In this state of case it would do violence to Section 78 of the Civil Code of Practice, which permits joinder of residents of different counties to give the court jurisdiction, to hold that there was here a proper joinder of parties. It would also do violence to the true meaning of Section 80 to hold that under all the facts and circumstances the judgment herein should stand as to Lyons & Company or to hold that they were not entitled to a dismissal as to them for want of jurisdiction. Here there was an improper joinder.

We are of the opinion that following testimony of Mrs. McGuire, when it was so clearly shown that no valid judgment could have been rendered against Stanfill, the court should have sustained appellant's motion to dismiss as to it. Again we are clearly of the opinion (in this case) that Stanfill's motion for a directed verdict should have been sustained, which would under all the decisions we have reviewed, require a dismissal as to appellant. We said in Basye v. Brown, 78 Ky. 553, 555:

> "This is manifestly an attempt to give such jurisdiction when the law does not contemplate it, and in such cases it is the duty of the courts to look to the spirit as well as to the letter [of the law], and to refuse to exercise a jurisdiction thus attempted to be conferred."

For the reasons stated, the judgment of the lower court is reversed, for proceedings consistent with this opinion.

Judgment reversed.